Affirmed as Reformed and Opinion filed August 23, 2007








Affirmed as Reformed and Opinion filed August 23, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00528-CR

_______________

 

ANTONIO SIERRA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1064598

                                                                                                                                               


 

O P I N I O N

Antonio Sierra appeals a conviction
for third degree felony driving while intoxicated  (ADWI@) with a deadly weapon finding[1]
on the grounds that the evidence is legally and factually insufficient to
sustain the DWI conviction and the deadly weapon finding.  We affirm as
reformed.








Intoxication

Appellant=s first issue contends that the
evidence is legally and factually insufficient[2]
to prove that he was intoxicated at the time he was operating his vehicle
because: (1) there was no evidence to extrapolate from the times of the field
sobriety test, breath test, or blood test[3]
back to the time of operating the vehicle; (2) the driving facts were not
indicative of intoxication; (3) his behavior after the accident could be
expected of someone involved in a serious accident; and (4) there were no
standard police observations of appellant being in an intoxicated condition at
the scene, such as slurred speech, staggering, holding on to a fixed object for
support, fumbling for proof of identification or insurance, dozing off during
interrogation, or the like.[4]








However, contrary to appellant=s contentions, intoxilyzer tests are
probative of intoxication without retrograde extrapolation evidence.  See
State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).  They may
thus be considered along with other evidence to determine whether appellant was
intoxicated at the time he was driving.  Stewart v. State, 129 S.W.3d
93, 97 (Tex. Crim. App. 2004).  In this case, that evidence shows that: (1)
police officers at the accident scene observed that appellant=s breath had a strong odor of
alcohol, and appellant admitted to them that he had been drinking; and (2)
appellant performed some of the field sobriety tests poorly[5]
and did not follow directions.  In light of the further evidence that appellant=s blood alcohol concentration after
the accident was 0.122 and 0.125 according to the breath tests and 0.12
according to the blood test, well above the legal limit of .08, the evidence is
legally sufficient to prove that appellant was intoxicated at the time he was
driving his vehicle.

To whatever extent appellant=s behavior after the accident could
be expected of someone involved in a serious accident, that fact does not
controvert the foregoing evidence of intoxication or otherwise render the evidence
factually insufficient to support the jury=s verdict.  Therefore, appellant=s first issue is overruled.

Deadly Weapon Finding

Appellant=s second issue asserts that the
evidence is legally and factually insufficient to sustain the finding that
appellant used or exhibited a deadly weapon, an automobile, during the
commission of the DWI offense because: (1) he had the right of way; (2) he was
driving at a moderate rate of speed; (3) both drivers= vision was obscured by a fence and
bushes; (4) prior to the collision, appellant applied his brakes and turned to
the left to avoid the collision; and (5) there is no evidence that his
intoxication caused or contributed to the accident.[6]








To support an affirmative deadly
weapon finding, the evidence must prove that the defendant used or exhibited
the deadly weapon during the commission of a felony offense or during immediate
flight therefrom.  Tex. Code Crim. Proc. Ann. art. 42.12 ' 3g(a)(2) (Vernon 2006).  A deadly
weapon is anything that in the manner of its actual or intended use is capable
of causing death or serious bodily injury.  Tex. Penal Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2007). 
Thus, a motor vehicle may be a deadly weapon even without specific intent to
use it as such.  Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App.
2005).  However, a finding that a vehicle is a deadly weapon must be supported
by evidence showing that the vehicle was actually driven in a deadly manner
during the offense.  See Olivas v. State, 202 S.W.3d 137, 146
(Tex. Crim. App. 2006); Drichas, 175 S.W.3d at 798, 799; Cates v.
State, 102 S.W.3d 735, 738-39 (Tex. Crim. App. 2003).[7]








In this case, appellant=s vehicle struck another vehicle
broadside as the second vehicle was crossing the lane in which appellant was
traveling to make a left turn.  The only evidence in the record reflecting the
manner in which appellant was driving indicates that: (1) his speed was below
the 35 mile per hour speed limit; (2) there were no skid marks leading up to
the accident location; and (3) based on the location that appellant said he
first perceived the danger, appellant should have been able to stop before the
collision occurred.  However, there is no evidence in the record that appellant
was driving in a reckless, threatening, careless, or dangerous manner, that he
had violated any traffic laws, or that he was otherwise at fault for the
collision.  Under these circumstances, the evidence is legally insufficient to
prove that appellant=s vehicle was a deadly weapon,[8]
and appellant=s second issue is sustained.  See Cates, 102 S.W.3d at 739.

                                                                   Disposition








The foregoing conclusion dictates
that the trial court=s entry of a deadly weapon finding be reversed, the deadly
weapon finding be deleted from the trial court=s judgment, and the conviction
for DWI, which is not affected by the deadly weapon finding, be affirmed as so
reformed.[9]  Because the
deadly weapon finding does not affect the determination of guilt or the length
of sentence, the appropriate disposition is generally not to remand the case
for a new hearing on punishment.[10]  Unanswered,
however, is whether in the circumstances of a particular case, such as this, a
remand for a new punishment determination[11]
could either be necessary or required by the interests of justice.  See
Tex. R. App. P. 43.2, 43.3.

An analogous situation was addressed
in Tucker, a federal case in which the trial court judge had imposed the
maximum punishment for robbery after considering two previous convictions that
were later determined to be constitutionally invalid (due to lack of counsel). 
See U.S. v. Tucker, 404 U.S. 443, 444B45 (1972).[12] 
Even though the invalid convictions had not been used for enhancement or
otherwise affected the available range of punishment, the appeals court held
that there was a reasonable probability that the defective prior convictions
may have led the trial court to impose a heavier sentence that it otherwise
would have imposed.  Id. at 445-46.  Accordingly, the appeals court
remanded the case to the District Court for resentencing without consideration
of the invalid convictions.  Id. at 446.








In appealing that decision to the
United States Supreme Court, the government argued that: (1) in imposing the
sentence, the relevant inquiry is not whether the defendant had been formally
convicted of past crimes, but whether he had in fact engaged in criminal or
antisocial conduct; and (2) in light of the other detrimental sentencing
information presented, it was unlikely that a different sentence would have
been imposed even if the trial judge had known that two of the defendant=s previous convictions were invalid. 
Id.

Acknowledging that the information
that may be considered by a trial judge in sentencing is largely unlimited, and
that a sentence imposed within statutory limits is generally beyond review, the
Court nevertheless affirmed the remand for reconsideration of sentencing,
reasoning in part:

[T]hese general propositions do not
decide the case before us. For we deal here, not with a sentence imposed in the
informed discretion of a trial judge, but with a sentence founded at least in
part upon misinformation of constitutional magnitude. As in Townsend v. Burke,
334 U.S. 736, . . . this prisoner was sentenced on the basis of assumptions
concerning his criminal record which were materially untrue. . . .

[T]he real question here is not
whether the results of the [prior] proceedings might have been different if the
respondent had had counsel, but whether the sentence in the [present] case
might have been different if the sentencing judge had known that at least two
of the respondent's previous convictions had been unconstitutionally obtained.

We agree with the Court of Appeals
that the answer to this question must be >yes.=  For if the trial judge . . . had
been aware of the constitutional informity [sic] of two of the previous
convictions, the factual circumstances of the respondent's background would
have appeared in a dramatically different light at the sentencing proceeding. 
Instead of confronting a defendant who had been legally convicted of three
previous felonies, the judge would then have been dealing with a man who
beginning at age 17, had been unconstitutionally imprisoned for more than ten
years, including five and one-half years on a chain gang.

Id. at 447-48.








Although the circumstances of this
case are less compelling than those in Tucker, appellant nevertheless
received the maximum sentence of ten years in connection with a vehicle
collision that the evidence did not show him to be either at fault in causing
or to otherwise be driving in a dangerous manner.  In addition, the court=s charge on the deadly weapon finding
did not instruct the jury that driving in a dangerous manner was required in
order to find that the vehicle was a deadly weapon.  The jury=s confusion on this aspect was
apparent during its deliberation on the special issue when it sent out a note
asking, AHow can one find a person guilty of
DWI third offense and not find them guilty of using a deadly [sic] namely a Amotor vehicle@?  The court=s answer was simply, APlease refer to the court=s charge.@

After making the deadly weapon
finding, the jury was given the court=s charge on punishment, which did not
refer to the deadly weapon finding, but also did not clarify that the deadly
weapon finding was not part of the offense for which punishment was being
decided.  Nor did the charge on the special issue or on punishment indicate the
actual purpose or effect of the deadly weapon finding.  This ambiguity could
have been compounded by the prosecutor=s misstatement, in urging the jury to
impose the maximum punishment, that Ait=s an aggravated offense and we made
sure of that.  That=s why that deadly weapon paragraph=s in there.  Not every DWI has that,
but for this man, it=s in there.@[13]

Therefore, rather than merely being
misinformed about the validity of prior convictions or other such collateral
punishment matters, as was the sentencing judge in Tucker, the jury in
this case was misinformed concerning the very nature of the offense appellant
committed in this case, and in a way that portrayed the offense in a more
morally culpable manner; and the jury might well not have understood that it
was not imposing punishment for the deadly weapon finding.  Regardless of the
outcome, the punishment determination would thus have been considerably more
fair if it had not been made in the context of the improper deadly weapon
finding.








However, the evidence at the
punishment hearing also showed that: (1) this was appellant=s fourth overall DWI conviction and
his second felony DWI conviction; (2) appellant had been convicted of failure
to stop and give information in connection with one of those prior DWIs; (3)
appellant had also been previously convicted of failure to identify oneself to
a police officer; and (4) appellant had a history of drinking problems that had
neither been corrected after the previous DWI convictions nor deterred him from
continuing to drive after drinking.  Under these circumstances, unlike those in
Tucker, and particularly in light of the relatively narrow range of
punishment in this case, there is no basis to conclude that the sentencing
considerations would have been dramatically different had the deadly weapon
finding not been submitted to, and made by, the jury.

Accordingly, we order the deadly
weapon finding deleted from the trial court=s judgment and affirm the judgment as
so reformed.

 

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered and Opinion filed
August 23, 2007.

Panel consists of Justices Yates,
Edelman, and Seymore.  (Yates, J., concurring without opinion).

Do not publish C Tex.
R. App. P. 47.2(b).









[1]           A jury found appellant guilty and assessed
punishment at 10 years confinement.  





[2]           In reviewing legal sufficiency, we view all
of the evidence in the light most favorable to the verdict to determine whether
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Rollerson v. State, __ S.W.3d __, __ (Tex.
Crim. App. 2007).  In a factual sufficiency review, we view all of the evidence
in a neutral light to determine whether the evidence supporting the verdict is
either so weak or so outweighed by the contrary evidence that the verdict is
clearly wrong and manifestly unjust. Roberts v. State, 220 S.W.3d 521,
524 (Tex. Crim. App. 2007), petition for cert. filed, __ U.S.L.W. __
(U.S. July 17, 2007) (No. 07-5500).





[3]           The accident occurred at about 4:30 p.m.,
appellant was arrested at 5:30 p.m., the breath test was administered at 7:02
p.m., the field sobriety tests were performed at 7:14 p.m., and the blood test
was administered at 8:05 p.m.





[4]           To convict appellant of third degree felony
DWI, the jury was required to find that appellant: (1) was intoxicated; (2)
while operating a motor vehicle, (3) in a public place; and (4) had been
convicted of two prior offenses related to operating a motor vehicle while
intoxicated.  See Tex. Penal Code Ann. ' 49.04 (Vernon 2003) & '
49.09(b)(2) (Vernon Supp. 2006).  AIntoxicated@ means: (1) not having the normal use of mental or
physical faculties by reason of the introduction of alcohol; or (2) having an
alcohol concentration of .08 or more.  Id. ' 49.01(2) (Vernon 2003).





[5]           During the Rhomberg Test, appellant
estimated that 30 seconds was actually 12 seconds and during the Awalk-and-turn@
test, appellant took nine steps out and ten steps back when he was instructed
to only take seven steps in each direction.





[6]           Texas law authorizes a deadly weapon
finding in a felony prosecution for DWI, third offense.  See Mann v. State,
58 S.W.3d 132, 132 (Tex. Crim. App. 2001).  An affirmative deadly weapon
finding affects sentencing, community supervision eligibility, and parole
eligibility.  See Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g (Vernon 2006); Tex. Gov=t Code Ann. '
508.145 (Vernon Supp. 2007), ' 508.149 & ' 508.151 (Vernon 2004).





[7]           Although this condition
was not included in the court=s charge, we review the sufficiency of the evidence according
to a hypothetically correct charge that accurately sets out the law.  See,
e.g., Hooper v. State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

Although not challenged in this case, the evidence
must also prove that the deadly weapon was used or exhibited during the
transaction from which the felony conviction is obtained.  Cates, 102
S.W.3d at 738 (holding that the relevant time period for the offense of failure
to stop and render aid was that after the complainant was hit; therefore, the
evidence that the truck was used as a deadly weapon up until the complainant
was hit was not sufficient to support a deadly weapon finding for the offense
of failing to stop and render aid where the facts did not show that the truck
was driven in a dangerous manner during the course of leaving that scene); see
Drichas, 175 S.W.3d at 797-98 (finding the evidence legally sufficient to
prove that vehicle was used as a deadly weapon during the offense of evading
detection with a vehicle).

 

Notably,
however, the phrase Aused or exhibited@
requires that the deadly weapon somehow facilitated the associated
felony.  See Tyra v. State, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995)
(the vehicle facilitated the offense of involuntary manslaughter in that it was
what caused the death of an individual, an element of the offense); Patterson
v. State, 769 S.W.2d 938, 942 (Tex. Crim. App. 1989) (firearm facilitated
the offense of possessing contraband by protecting appellant=s custody of the contraband).  Although also not
challenged in this case, it is not apparent how a deadly weapon can facilitate
an offense of merely driving while intoxicated, which does not require death,
injury, threat of harm, or the like.  In holding that a deadly weapon finding
can be made in a felony DWI offense, the Court of Criminal Appeals=s opinion did not itself address the merits, but 
instead relied on the reasoning of the Austin Court of Appeals opinion in the
same case.  See Mann, 58 S.W.3d at 132.  However, the opinion of the
Austin Court does not explain how a deadly weapon can facilitate driving while
intoxicated because Mann did not challenge that aspect, contending instead that
the finding requires evidence that the deadly weapon facilitated the commission
of a separate offense.  See Mann v. State, 13 S.W.3d 89, 91 (Tex. App.CAustin 2000), aff=d, 58 S.W.3d
132 (Tex. Crim. App. 2001).  Although the Austin Court=s opinion also cited Tyra in this regard, as
noted above, Tyra involved the offense of involuntary manslaughter, not
DWI.





[8]           Cf. Drichas, 175 S.W.3d at 797B98 (holding that vehicle was used as a deadly weapon
where the appellant recklessly pulled out of a gas station, failed to yield to
oncoming traffic, cut off a police officer, ran a stop sign at high speeds,
caused his vehicle to fishtail, wove between lanes, turned abruptly into a
construction zone, and drove on the wrong side of the highway); Mann, 58
S.W.3d at 132 (holding that vehicle was used as a deadly weapon where the
appellant drove onto a curb and nearly hit another vehicle head-on); see
also Olivas, 202 S.W.3d at 147 (holding that vehicle was used as a deadly
weapon where appellant swerved into oncoming traffic, was speeding, overtook
other vehicles, and made illegal u-turns).  The State does not contend that
appellant was driving his vehicle in a dangerous manner but instead, citing Tyra,
argues that appellant=s vehicle was a deadly weapon because it caused the
other driver serious injury in the collision.  See Tyra, 897 S.W.2d at 
798 (Aanything, including a motor vehicle, which is actually
used to cause the death of a human being is a deadly weapon.  This is
necessarily so because a thing which actually causes death is, by definition, >capable of causing death.= It follows that Tyra=s pickup was a deadly weapon in this case.@ (citations omitted)).  However, Tyra does not
support a deadly weapon finding in the absence of dangerous driving because the
appeals court decision in that case reflects that it involved very dangerous
driving.  See Tyra v. State, 868 S.W.2d 857, 860 (Tex. App.CFort Worth 1993), aff=d, 897
S.W.2d 796 (Tex. Crim. App. 1995).  In addition, although it is unquestionably
dangerous to drive while intoxicated, it does not necessarily follow that
driving while intoxicated is itself driving in a dangerous manner for purposes
of a deadly weapon finding.  Otherwise, driving while intoxicated would be a per
se use of a deadly weapon in every felony DWI case, even for defendants
who, like appellant in this case, are not driving in a dangerous manner (even
though they are driving while intoxicated) but would, in effect, nevertheless
be penalized for the dangerous driving of another motorist who actually caused
the collision.





[9]           See Tex. R. App. P 43.2; Drichas,
175 S.W.3d at 798 (stating that if a court of appeals properly determines that
the State failed to show that a defendant used a deadly weapon in the
commission of an offense, that court may delete the deadly weapon finding).   





[10]         See, e.g.,Williams v. State, 970
S.W.2d 566, 566 (Tex. Crim. App. 1998) (reversing the appeals court=s decision that, after finding the evidence
insufficient to support a deadly weapon finding,  ordered a new trial on
punishment instead of deleting the deadly weapon finding; ordering the deadly
weapon finding deleted; and affirming the trial court=s judgment as so reformed).  Ex parte Patterson,
740 S.W.2d 766, 778 (Tex. Crim. App. 1987).





[11]         See, e.g., Lopez v. State, 18 S.W.3d
637, 639 (Tex. Crim. App. 2000) (recognizing authority of appeals courts to
reverse and remand on punishment only).





[12]         Tucker raised this issue by way of a subsequent
motion to vacate judgment and set aside sentence.





[13]         Contrary to the prosecutor=s statement, there is no such offense as aggravated
DWI.  The punishment charge also instructed the jury, among other things, that Ayou may take into consideration all the facts shown by
the evidence . . . in the full trial of this case and the law as submitted to
you in this charge.@