# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00326-CR

**Robert Theodore Boes, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 02-680-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Richard Theodore Boes for the offense of driving while intoxicated (DWI) and found that he used his motor vehicle as a deadly weapon during the commission of that offense. Boes was sentenced to four years of imprisonment. He now challenges the legal sufficiency of the evidence to support the deadly weapon finding. Finding the evidence insufficient, we reverse the deadly weapon finding and strike it from the trial court's judgment.

## BACKGROUND

At around 1:45 a.m., Trooper Roy Tower came to a red light on Greenlawn Street at the intersection of Greenlawn and Gattis in Round Rock. While waiting at the light, Tower noticed

Boes passing through the intersection on Gattis in a Ford Explorer with no front license plate. When the road was clear, Tower turned right onto Gattis and proceeded to follow Boes to the intersection at Gattis and Southcreek. Although Tower's view of Boes was partially blocked by a pickup truck between them, Tower observed that Boes failed to come to a complete stop at the stop sign. Then, while making a left turn at the intersection, Boes suddenly over accelerated and momentarily lost control of his vehicle, causing it to fishtail sideways and almost hit the curb of the sidewalk. After a few seconds, Boes regained control. At that point, Tower activated his overhead lights, and the pickup truck at the stop sign moved out of the way, allowing Tower to follow Boes. There were no other vehicles on the road at the time of the fishtail. Tower eventually stopped Boes near an apartment complex on Southcreek.

After some initial questioning, Tower asked Boes to get out of his vehicle. Tower noticed that Boes displayed very poor balance, smelled strongly of alcohol, and had red, bloodshot eyes. Tower administered a series of field sobriety tests on Boes, determined that Boes was intoxicated, and arrested him.

The State charged Boes with the offense of felony DWI based on four prior DWI convictions. *See* Tex. Pen. Code Ann. §§ 49.04, 49.09 (West 2004). The indictment also alleged that Boes had used his motor vehicle as a deadly weapon. At trial, a jury found Boes guilty of felony DWI, made a finding that Boes had used his vehicle in a manner capable of causing death or seriously bodily injury, and sentenced Boes to four years of imprisonment. *See id.* § 1.07(a)(17)(B) (West 2004). Boes now challenges the legal sufficiency of the evidence to support the jury's finding that he used his motor vehicle as a deadly weapon.

## DISCUSSION

A "deadly weapon" means: "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). An automobile can be a deadly weapon if it is driven so as to be capable of causing death or serious bodily injury. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). The "capability" of causing death or serious bodily injury must be evaluated in light of the facts that actually existed while the felony DWI was committed, rather than conjecture about what might have happened if the facts had been somewhat different. *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998). There must be evidence that others were actually endangered, not "merely a hypothetical potential for danger if others had been present." *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). An intent to achieve a specific purpose is not necessary to support a finding that an object was a deadly weapon in the manner of its use. *See Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995).

When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury as trier of fact is entitled to resolve any conflicts in the evidence, evaluate the credibility of the witnesses, and

3

determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In *Mann*, the court of criminal appeals held that a deadly weapon finding was supported by testimony that the defendant "almost hit another vehicle head-on" when he drove across the center line of the highway and forced an oncoming vehicle to take "evasive action." *See* 58 S.W.3d at 132. In a factually similar case to *Mann*, an officer testified that not only were there other vehicles on the road when the defendant drifted out of his lane, but the defendant also came "real close to striking and hitting" one of these vehicles. *See Ochoa v. State*, 119 S.W.3d 825, 828 (Tex. App.—San Antonio 2003, no pet.). The danger of another vehicle being hit was imminent and likely, not merely conjectural. In both cases, the evidence in the record showed that other drivers were present *and* endangered by the defendant's use of his vehicle. Both courts concluded that the evidence was sufficient to support a deadly weapon finding. *Id.*; *Mann*, 58 S.W.3d at 132.

By contrast, the Fort Worth Court of Appeals in *Williams* set aside a deadly weapon finding because no one else was present when the DWI offense occurred. 946 S.W.2d at 436. Williams was driving on a major interstate at only five to ten miles per hour and eventually rolled to a stop in a traffic lane of the highway. *Id.* at 433. Because there were no other motorists on the road, the court recognized that the "capability" of Williams's car to cause death or serious bodily injury was merely conjectural about what *might* have happened if the facts had been different than they were. *Id.* at 435. As such, the court reversed the trial court's deadly weapon finding. *Id.* at 436.

The facts of the present case bear a closer resemblance to the facts of *Williams* than those of *Mann* and *Ochoa*. First, Boes failed to come to a complete stop at the stop sign.[1] Although there was another vehicle behind him, Boes did not endanger the driver of that vehicle or cause him to take evasive action by failing to stop completely before turning left. Next, Boes over accelerated while turning left and momentarily lost control on Southcreek. At this time, the driver behind him had pulled up to the stop sign on Gattis. Although perhaps within view of Boes, there is no evidence, even when viewing the facts in the light most favorable to the verdict, that the driver was endangered by Boes's loss of control at the intersection. There is no evidence, for example, that the driver had to take evasive action to avoid an accident, as was the case in *Mann*. Like the car parked in the middle of a major highway in *Williams*, a vehicle fishtailing on a road presents a potential for danger, but this danger was only hypothetical because at the time there was no one near Boes whom he could have endangered with his vehicle. *See id*. at 435. Furthermore, Tower testified that Boes's vehicle almost hit the curb while he lost control. Tower explained that many people, including himself, often jog or walk on the curbed sidewalk, and had there been someone there on that occasion, and had Boes actually hit the curb with his vehicle, such a pedestrian could have been endangered.

We find that this evidence regarding the vehicle's "capability" of causing death or serious bodily injury merely raises conjecture about what might have happened had the facts been different than they were. *See id*. Thus, viewing the evidence in the light most favorable to the verdict, under the standards that Texas courts have previously applied regarding the status of a

---

[1] Tower described the stop as a "California bump and roll."

vehicle as a deadly weapon, it is legally insufficient to support the deadly weapon finding beyond a reasonable doubt.

## CONCLUSION

Finding the evidence legally insufficient to support the deadly weapon finding, we modify the judgment of conviction to delete the finding that a deadly weapon was used during the conviction of the offense.  As modified, the judgment is affirmed.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed:   July 29, 2004

Do Not Publish